## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CALEB SHARP,

      *Plaintiff,*

CASE NO. 14-13703

DISTRICT JUDGE JUDITH E. LEVY

*v.*                           MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et*

1

*seq.* The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 14.)

Plaintiff Caleb Sharp was 29 years old when he applied for benefits on March 5, 2012, alleging that he became disabled on December 25, 2010. (Transcript, Doc. 7 at 155, 161.) His employment history includes work as a sales and stock person at WalMart for less than one year, a self-employed secretary for four years, and a stock and repair worker at a furniture store for less than one year. (Tr. 178.) At the initial administrative stage, the Commissioner considered whether he was disabled by discogenic and degenerative back disorders and other unspecified arthropathies. (Tr.77, 78.) The impairments, alone or in combination, were not found to be disabling. (*Id.*) Plaintiff asked for a hearing in front of an Administrative Law Judge ("ALJ"), who would consider the application de novo.

ALJ Joanne Adamczyk convened the hearing on May 14, 2013. (Tr. 46-76.) In her decision filed on May 31, 2013, the ALJ found that Plaintiff was not disabled. (Tr. 30-45.) The ALJ's decision became the Commissioner's final decision, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 26, 2014, when, after review of additional exhibits[1] (Tr. 362-88), the Appeals Council denied

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Plaintiff's request for review. (Tr. 1-7.) On September 24, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

## B.   Standard of Review

Applicants for Social Security benefits go through a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the factual determinations to ensure they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of*

*Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court does not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's

decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "[T]he . . . standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the

administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C.   Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353). *Accord Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381-85. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

6

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474. *See also Cruse*, 502 F.3d at 540. The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459

7

F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ found at step one that Plaintiff met the insured status requirements through March 31, 2014, and had not engaged in substantial gainful activity since December 25, 2010, the alleged onset date. (Tr. 35.) At step two, the ALJ concluded Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, history of bilateral wrist flexor tendinosis, and obesity." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 36.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work, as defined in the regulations, 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. 37-40.) The ALJ also found that Plaintiff was unable to perform any past relevant work. (Tr. 40.) The ALJ also found that Plaintiff was 27 years old on the alleged disability onset date, making him a younger individual age 18-44. (*Id.*) The ALJ then found Plaintiff could perform a significant number of other jobs in the national economy and therefore was not disabled. (Tr. 41-42.)

### E.   Administrative Record

Plaintiff sought treatment for back pain, radiating to his right leg, with the Hamilton Community Health Network from April to October of 2011, with Dr. Jawad

8

Shah, M.D.. (Tr. 225-77.) Upon examination, all functions were normal except a pars defect was noted at L5 which was credited as the cause of Plaintiff's pain, exacerbated by Plaintiff's weight gain. (Tr. 225-26, 233, 317, 325, 328.) Dr. Shah recommended surgery if conservative measures fail. (Tr. 234.) Plaintiff was consistently noted to have a full range of motion in all joints, he had no focal deficits and his cranial nerves were grossly intact with normal sensation, reflexes, coordination, muscle strength and tone. (Tr. 241, 245, 252.)

An EMG performed on April 21, 2011, because of Plaintiff's complaints of numbness in his hands and feet with back and neck pain, showed "no electrodiagnostic evidence of cervical radiculopathy, [?] plexopathy, diffuse peripheral neuropathy or mononeuropathy such as carpal tunnel syndrome or [?] or radial mononeuropathy of both upper extremities" and "[n]o evidence of lumbosacral radiculopathy, plexopathy, diffuse [?] neuropathy or mononeuropathy of both lower extremities." (Tr. 265, 308.)

A CT scan of Plaintiff's lumbar spine taken on July 19, 2011, showed "bilateral "spondylolysis" but "L5 without spondylolisthes[,]" "[m]inor central disc protrusion at L4-L5[,]" and "[f]airly prominent broad-based disc protrusion at L5-S1 which extends to the neural foramina bilaterally, fairly extensively." (Tr. 255, 278, 302, 315, 332.)

Plaintiff was diagnosed, by Dr. Steven Schultz, with "[b]ilateral wrist flexor tendinosis, which is clinically resolved at this time" on December 28, 2011. (Tr. 235, 304.)

Plaintiff was treated by Dr. Rama Rao, M.D. from June to November 2011. (Tr. 291-303.) Dr. Rao diagnosed lumbar degenerative disk disease and recommended lumbar epidural steroid injections. (Tr. 236-37.) Dr. Rao noted that Plaintiff "should be able to function[,]" that he "should get pain medication from one prescriber" and that he should use "[c]aution with narcotics. Urine drug testing needs to be monitored randomly." (Tr. 257-58.) On September 8, 2011, Dr. Rao noted that the "[g]oal is to decrease pain medication and increase activity" such as "stretching and strengthening exercises." (Tr. 293.) Dr. Rao treated Plaintiff with epidural steroid injections in June, July and November, 2011. (Tr. 298-301.)

Plaintiff participated in therapy with the Medical Rehabilitation Group from April to December 2011. (Tr. 304-16.) Plaintiff also sought treatment with Insight Neurosurgery and Neuro Science in 2012. (Tr. 317-24.)

On February 28, 2012, images of Plaintiff's lumbar spine showed "Grade 1 anterolisthesis of L5 on S1 with suspected bilateral L5 pars spondylolysis. (Tr. 335.)

On July 3, 2012, Dr. Shah placed Plaintiff on a "15-20 pound work weight restriction and told him that I would support him for disability if he needed a letter of support but from my perspective I don't recommend surgery at this point." (Tr. 328.)

Plaintiff was also treated by Dr. Gary Roome in 2013. (Tr. 356-58, 362-89.)

On April 15, 2013, Plaintiff underwent a functional abilities evaluation with Jodie Sarginson, OTR, at the Cora Rehabilitation Clinics in Flint, Michigan. (Tr. 336-55.) In the summary, it was noted that Plaintiff "completed dynamic lifting-occasional floor to

10

waist at 70 lbs…. He completed dynamic lifting-occasional floor to shoulder at 30 lbs. He was able to lift 40 lbs but biomechanical changes were noted." (Tr. 336.) It was also noted that Plaintiff's "baseline elevated heart rate was a concern" and that he "presented with excessive sweating." (*Id.*) Plaintiff's grip strength averaged at 59.4 pounds in the left hand and 48.4 pounds in the right hand, both of which were below the normal range. (Tr. 340.) Plaintiff averaged 101.2 pounds for static pull strength and 149.8 pounds for static push strength. (Tr. 343-44.) Plaintiff "demonstrated a [floor to waist] safe weight lifting ability of 70 lbs. The reason for the conclusion of the dynamic lifting protocol was the fact Mr. Sharp stopped the test due to psychophysical factors." (Tr. 345.) Plaintiff also "demonstrated a [floor to shoulder] safe weight lifting ability of 30 lbs" and it was noted that Plaintiff "stopped the test due to psychophysical factors." (Tr. 346.) Plaintiff demonstrated a waist to shoulder "safe weight lifting ability of 50 lbs" and it was also noted that Plaintiff "stopped the test due to psychophysical factors." (Tr. 347.) Plaintiff "demonstrated a safe weight carrying ability of 40 pounds" and his sustained stooping reach "score of 45% which correlates to a rating of below competitive." (Tr. 348-49.)

On April 22, 2013, Dr. Siva Sripada, D.O. examined Plaintiff and found he had "normal preserved strength in his lower extremities" but "some mild weakness on the right side for plantar flexion when compared to the left, but otherwise DTRs are 2+ and intact bilaterally and symmetric, and strength is overall preserved." (Tr. 360.) Dr. Sripada recommended "continuing with weight loss and core strengthening as the primary

treatment for his low back pain." (*Id.*) Dr. Sripada noted that "flexion/extension films did not show any significant instability." (Tr. 361.)

At the administrative hearing, Plaintiff testified that he "had several accidents over the years in regards to my back, but also my doctors are more recently discovering that it's actually degenerative as well." (Tr. 51.) Since the onset date, Plaintiff stated that he tried to work, "did some computer work, side work, you know, and drywall. But I was never signed into a company or anything like that[.]" (Tr. 52.) Plaintiff indicated that he takes prescription strength ibuprofen for pain, that he is 5'10" and weighs 315 pounds. (Tr. 53.) Plaintiff has maintained a driver's license but testified he drives only "locally" because of occasional numbness in his right leg and that his mother drove him to the hearing. (Tr. 53-54.) Plaintiff was recently diagnosed with either carpal tunnel syndrome or tendonitis. (Tr. 54.) Plaintiff does household chores, such as vacuuming, dishes, and cooking but "take[s] long rests afterward" and does them "like a segment at a time." (Tr. 55.) Plaintiff also does his own laundry despite the fact that the washer and dryer are in the basement of his mother's home where he lives. (Tr. 55-56.) Plaintiff has a computer that he uses to watch television (which he keeps on all day) and he has email and Facebook accounts. (Tr. 56-57.) Plaintiff also plays video games on a PlayStation several times a week, especially if a friend comes over. (Tr. 57-58.)

Plaintiff takes "a lot of naps" and indicated that in addition to medication he has undergone some injections that "did not help." (Tr. 58.) Dr. Shah, Plaintiff's neurologist, recommended surgery but told Plaintiff he needed to lose weight first, Plaintiff began

exercising, but injured himself and stopped. (Tr. 59.) When asked whether there were any limitations on Plaintiff's ability to lift objects, he responded that Dr. Shah told him not to lift more than 15 pounds, and that he can lift 15 pounds. (Tr. 59-60.) Plaintiff stated that after sitting for one-half hour, he needs to stand up and stretch for "not long, just a minute or two" and that he is not able to stand for very long, only for five minutes. (Tr. 60.) Walking "anything over a couple of blocks is really rough" and as far as walking inside, he can only do that for "a minute or two." (Tr. 60-61.) Plaintiff has no trouble handling his own personal hygiene and he can bend and pick things up. (Tr. 61.) Plaintiff reported that he has gout and has taken "over-the-counter herbs" for that and has had a flare-up last for one week. (Tr. at 61-62.) Plaintiff keeps crutches in his room "just in case." (Tr. 62.) Plaintiff's pain level, with medication, was five out of ten at the hearing, "just a constant annoyance like an elbow's in my back." (Tr. 62-63.) Plaintiff also described having migraines once or twice a month that last for up to one week. (Tr. 63.) Plaintiff's ability to grasp and hold on to items is diminished when he has migraines. His right hand is most affected but he is left-handed. (Tr. 63-64.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who would be

> limited to a restricted [sic] referring to sedentary work, lifting up to ten pounds occasionally and less than that frequently; who would need a sit/stand option approximately once an hour for a couple minutes to stretch; who could not operate foot controls; could not climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs; and could I'm going to say because of his gout that he could not kneel, crouch or crawl.
> He could perform tasks that required frequent but not constant fine manipulation; must avoid work around moving machinery or unprotected

13

> heights; because of chronic pain would be limited to unskilled work, which
> is simple, routine, repetitive tasks with no production rate or pace work
> such as on the assembly line.

(Tr. 73-74.) The VE responded that such a person could perform the 2,500 Michigan or

67,000 national jobs as an unskilled office clerk, the 2,000 Michigan or 65,000 national

jobs as a reception and information clerk, and the 1,000 Michigan or 22,000 national jobs

as a packer. (Tr. 74-75.) The VE also testified that taking unscheduled rest breaks two or

three times daily for an hour above normal breaks would preclude competitive

employment. (Tr. 75.)

### F.    Analysis and Conclusions

#### 1.    Legal Standards

The ALJ determined that Plaintiff had the RFC to perform a limited range of

sedentary work. (Tr. 37-40.) Such work

> involves lifting no more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools. Although a
> sedentary job is defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job duties. Jobs are
> sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. §§ 404.1567(b), 416.967(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard

in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.

I turn next to the consideration of whether substantial evidence supports the ALJ's

decision.

#### 2.    Substantial Evidence

14

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence could justify the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ committed two reversible errors. First, he asserts that the ALJ failed to properly determine Plaintiff's residual functional capacity ("RFC") (Doc. 21 at ID 535-44), including that the ALJ failed to "cite, consider, or apply SSR 96-8p" regarding RFCs for less than a full range of sedentary work and only gave "lip service at the beginning of her decision to SSR 02-1p" regarding obesity. (*Id.*) Second, he contends that the ALJ "erred as a matter of law by failing to properly analyze the claimant's pain and associated limitations." (Doc. 21 at ID 544-46.)

### a.    RFC

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most [she] can still do despite [her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). The Plaintiff bears the burden of proof during the first four stages of

15

analysis, including proving her RFC. *Jones*, 336 F.3d at 474; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). At step five, the Commissioner does not have to add anything to the RFC, 20 C.F.R. § 404.1560(c), and consequently the burden to prove limitations remains with the Plaintiff at this stage. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 538 (6th Cir. 2002); *DeVoll v. Comm'r of Soc. Sec.*, 234 F.3d 1267, 2000 WL 1529803, at *3 (6th Cir. 2000) (unpublished table decision); *Her*, 203 F.3d at 391-92. The hypothetical the ALJ propounds to the VE is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

Plaintiff contends that the ALJ failed to "cite, consider, or apply SSR 96-8p" regarding RFCs for less than a full range of sedentary work and only gave "lip service at the beginning of her decision to SSR 02-1p" regarding obesity. (Doc. 21 at ID 535-44.) SSR 96-8p "establishes narrative discussion requirements that force ALJs to explain and justify their RFC." *Gilliam v. Comm'r of Soc. Sec.*, No. 14-12335, 2015 WL 3580502, at *17-18 (E.D. Mich. June 5, 2015) (adopting Report & Recommendation). Under the Ruling, the ALJ must canvass the relevant evidence, explain any inconsistencies, and provide a "thorough discussion" and "logical explanation" of how a claimant's symptoms affect his or her capacity to work. SSR 96-8p, 1996 WL 374184, at *7. Here, the ALJ considered all the evidence and made logical findings regarding the manner in which Plaintiff's symptoms affect his ability to work. (Tr. 37-40.) As part of that analysis, the

ALJ considered the evidence that directly addressed functional abilities, i.e., the functional abilities evaluation performed by Ms. Sarginson, and the state agency examiner that found Plaintiff could perform work activity at the light exertional level. (Tr. 39-40.) The ALJ's findings are consistent with the only findings of record to address functional abilities. Obviously, work at the sedentary level is less demanding than the recommended light level of the state agency examiner. In addition, the most thorough examination conducted by Ms. Sarginson also supports the ALJ's RFC findings. Ms. Sarginson found that Plaintiff could pull 101.2 pounds, could push 149.8 pounds, could lift 30 pounds from the floor to the shoulder, could lift 50 pounds from the waist to the shoulder and could carry 40 pounds. (Tr. 343-49.) These functional abilities exceed the requirements for sedentary work and thus, the RFC is supported by substantial evidence.

Finally, as to obesity, SSR 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation omitted). In this case, the ALJ expressly considered all of Plaintiff's impairments, severe and non-severe, and I therefore suggest that SSR 02-1p was satisfied.

### b.    Credibility Analysis

#### i.    Governing Law

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the

credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390. However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required, *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d Cir. 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)   [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3). *See also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. *See also Cruse*, 502 F.3d at 542 (noting that the "ALJ's credibility determinations about the claimant are

19

to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones*, 336 F.3d at 475 ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

### ii.      Analysis

The ALJ expressly considered the relevant factors (Tr. 37-40,) and concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Tr. 38.)

Although Plaintiff certainly suffers from back pain, there is no evidence supporting a finding of disability. From the initial diagnosis of a pars defect at L5, Dr. Shah noted that all other functions were normal and that Plaintiff's pain was likely exacerbated by weight gain. (Tr. 225-26, 233, 317, 325, 328.) Plaintiff was consistently noted to have a full range of motion in all joints, he had no focal deficits and his cranial nerves were grossly intact with normal sensation, reflexes, coordination, muscle strength

and tone. (Tr. 241, 245, 252.) An EMG was normal as to upper and lower extremities. (Tr. 265, 308.) Plaintiff's tendinosis had resolved by December 28, 2011. (Tr. 235, 304.)

Although later tests also showed "[m]inor central disc protrusion at L4-L5[,]" and "[f]airly prominent broad-based disc protrusion at L5-S1 which extends to the neural foramina bilaterally, fairly extensively[,]" (Tr. 255, 278, 302, 315, 332,) resulting in an additional diagnosis of lumbar degenerative disk disease, Dr. Rao also noted that Plaintiff "should be able to function." (Tr. 257.) Plaintiff was treated with some epidural steroid injections (Tr. 298-301,) but it was still noted that the "[g]oal is to decrease pain medication and increase activity" such as "stretching and strengthening exercises." (Tr. 293.) The only work weight restriction placed on Plaintiff was one that would not prevent sedentary work, i.e., a "15-20 pound work weight restriction[.]"

Most recent tests by Dr. Sripada found Plaintiff had "normal preserved strength in his lower extremities" but "some mild weakness on the right side for plantar flexion" thereby causing Dr. Sripada to recommend "continuing with weight loss and core strengthening as the primary treatment for his low back pain." (*Id.*)

Considering all of Plaintiff's impairments, the modest treatment Plaintiff received also supports the ALJ's findings since such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's credibility finding that

none of Plaintiff's impairments, alone or in combination, could reasonably be expected to cause the alleged disabling symptoms.

### G. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is supported by substantial evidence.

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 9, 2016                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge



**<u>CERTIFICATION</u>**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 9, 2016                               By s/Kristen Krawczyk
                                                  Case Manager

23