UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Caleb Sharp,

               Plaintiff,        Case No. 14-cv-13703

v.                                   Judith E. Levy
                                    United States District Judge

Commissioner of Social Security,
                                    Mag. Judge Patricia T. Morris

              Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S OBJECTIONS [25] AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [24] TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23] AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9]**

On March 9, 2016, the Magistrate Judge filed her Report and Recommendation, finding that substantial evidence supports the Commissioner of Social Security's determination that plaintiff Caleb Sharp is not disabled and recommending that the denial of benefits be affirmed. Plaintiff timely filed objections on March 23, 2016, and the Commissioner responded on April 3, 2016. For the reasons set forth below, plaintiff's objections are denied and the Report and Recommendation is adopted in full.

I.  **Background**

Plaintiff was twenty-nine years old when he applied for benefits on March 5, 2012, alleging that he became disabled on December 25, 2010. (Dkt. 7-5 at 10.) His employment history includes work as a sales and stock person at Walmart for less than one year, a self-employed secretary for four years, and a stock and repair worker at a furniture store for less than one year. (Dkt. 7-6 at 8.) At the initial administrative stage, the Commissioner considered whether plaintiff was disabled by discogenic and degenerative back disorders and other unspecified arthropathies. (Dkt. 7-3 at 3.) These impairments were found not to be disabling, alone or in combination. (*Id.* at 4.) Plaintiff asked for a hearing in front of an Administrative Law Judge, who would consider the application *de novo*.

ALJ Joanne Adamczyk held a hearing on May 14, 2013. (Dkt. 7-2 at 47-77.) In her decision filed on May 31, 2013, the ALJ found that Plaintiff was not disabled. (Dkt. 7-2 at 34-47.) The ALJ's decision became the Commissioner's final decision on September 26, 2014, after the Appeals Council reviewed additional exhibits and ultimately denied plaintiff's request for review. (Dkt. 7-7 at 1-7, 140-66); s*ee Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). Plaintiff filed suit in this Court on September 24, 2014. (Dkt. 1.)

The Court finds that plaintiff's relevant medical history was accurately described by the Magistrate Judge. (*See* Dkt. 24 at 8-14.) The Court adopts the factual background as set forth by the Magistrate Judge and expands where appropriate.[1]

## II. Standard of Review

An applicant who is not satisfied with the Commissioner's final decision may obtain review in federal district court. 42 U.S.C. § 405(g). The district court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). The Court may affirm, modify, or reverse the Commissioner's decision, and may also choose to remand the case for rehearing when appropriate. 42 U.S.C. § 405(g).

---

[1] The Court did not review the additional evidence that was presented to the Appeals Council, because plaintiff's request for review was denied and that evidence was not before the ALJ. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

The Commissioner's findings of fact are given substantial deference on review and are conclusive if supported by substantial evidence. *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). If there is substantial evidence to support the Commissioner's decision, the district court must affirm it even if substantial evidence also supports a contrary conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (if the decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion").

When deciding whether there is substantial evidence to support the Commissioner's factual findings, the district court is limited to an examination of the record and should consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health and Human Servs.*,

974 F.2d 680, 683 (6th Cir. 1992). However, neither the Commissioner nor the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

When a Magistrate Judge has submitted a Report and Recommendation and a party has filed timely objections, the district court conducts a *de novo* review of those parts of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1)(C).

### III. Analysis

#### *a. Objection No. 1*

Plaintiff argues that the Magistrate Judge "should have engaged and addressed the specific legal challenges raised by [p]laintiff rather than create[] post hoc rationalizations for the ALJ's conclusions and look[] for substantial evidence to justify the ALJ's ultimate decision." (Dkt. 25 at 15.) Plaintiff seems to object to the Magistrate Judge's finding that "the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to [p]laintiff's claim," before turning to "whether substantial evidence supports the ALJ's decision." (Dkt. 24 at 14.)

Plaintiff is patently incorrect. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth*, 402 F.3d at 595. That is what the Magistrate Judge did here. She first found that the appropriate legal standard was applied by the ALJ, and then turned to the record to see "whether substantial evidence supports the ALJ's decision." Thus reversal or remand on this point is not warranted.

### b. Objection No. 2

Plaintiff argues that the ALJ "failed to properly identify the [p]laintiff's Residual Functional Capacity by properly complying with SSR 96-8p, 96-9p[,] and 02-1p." (Dkt. 25 at 5-6.) According to plaintiff, the ALJ "failed to apply SSR 96-8p by specifically evaluating and explaining how [plaintiff] retains the ability to work a regular work schedule on a sustained and continuous basis, eight hours a day, five days a week, notwithstanding his lumbar radiculopathy, fractured vertebrae, need to lie down, need to be off task, and his mental limitations secondary to his pain, fatigue, insomnia, and medications."

6

(*Id.* at 4.)  Plaintiff argues that the ALJ "failed to even mention SSR 96-8p in her decision" or "provide a narrative discussion or explanation as to how [plaintiff] can sustain work on a regular and continuous basis." (*Id.* at 5-6.)

The ALJ did in fact cite SSR 96-8p. (*Id.* at 35-36 ("An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.").) But plaintiff is correct that the ALJ is required to do more than that. She must also include a "narrative discussion" of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996) (footnote omitted).

The ALJ concluded as follows:

[Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C[.]F[.]R[.] 404.1567(a) and 416.967(a) except [plaintiff] requires a sit/stand option approximately once an hour to stretch.  [Plaintiff] cannot operate foot controls.  [Plaintiff] cannot climb ladders, ropes,

7

or scaffolds. [Plaintiff] can occasionally climb ramps or stairs. Because of [plaintiff]'s allegations of symptoms of gout, [plaintiff] cannot kneel, crouch, or crawl. [Plaintiff] can perform tasks that require frequent, but not constant, fine manipulation. [Plaintiff] must avoid work around moving machinery or unprotected heights. Because of chronic pain, [plaintiff] is limited to unskilled work, defined as simple, routine, repetitive tasks with no production rate or pace work, such as on an assembly line.

(Dkt. 7-2 at 38.)

However, the ALJ did not provide a narrative discussion regarding plaintiff's "ability to perform sustained work activities in an ordinary setting on a regular and continuing basis." To be sure, she recommends restrictions based on plaintiff's ability to lift up to seventy pounds and other activities that require exertion. (Dkt. 7-2 at 40-41 (considering functional abilities evaluation performed by Jodie Sarginson, residual functional capacity assessment of State agency examiner Russell E. Holmes, M.D., and other medical records of plaintiff's treating physicians).) But the residual functional capacity "is defined as the most, not the least, [plaintiff] can do despite his impairments." *King v. Comm'r of Soc. Sec.*, No. 14-cv-14330, 2015 U.S. Dist. LEXIS 176662, at *13 (E.D. Mich. Dec. 3, 2015) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)).

8

Still, this is not necessarily fatal to the ALJ's decision. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 118 (6th Cir. 2010) ("The only thing arguably missing from the ALJ's decision is a specific discussion of Plaintiff's ability to sustain work in an ordinary day, but it is implicit in her opinion that this ability is only moderately affected by Plaintiff's [] impairments."). Here, the ALJ noted that plaintiff's "final safe weight lifting ability was determined to be 70 pounds," as determined by Jodie Sarginson, an occupational therapist, who performed a functional abilities evaluation. (Dkt. 7-2 at 40.) And the ALJ noted that plaintiff "could frequently operate bilateral foot controls," "occasionally climb ladders, ropes, and scaffolds," and "occasionally stoop and crouch," as determined by Russell E. Holmes, M.D., who performed a physical residual functional capacity assessment. (*Id.* at 41.) Moreover, the ALJ noted that Dr. Jawad Shah, M.D., one of plaintiff's treating physicians, "recommended a 15 to 20-pound work weight restriction." (*Id.* at 40.)

Despite all this, the ALJ concluded that plaintiff's "residual functional capacity assessment is somewhat more restrictive and limits [plaintiff] to lifting no more than 10 pounds." (*Id.* at 40.) The ALJ further notes in the residual functional capacity assessment that

9

plaintiff must be able to sit and stand "approximately once an hour to stretch," and "cannot operate foot controls" or "climb ladders, ropes, or scaffolds."

The ALJ's finding as to residual functional capacity is much narrower than what the functional abilities evaluation, physical residual functional capacity assessment, and treating physician recommendations provide plaintiff *can* do. Even though the ALJ's narrative lacks "a specific discussion of [p]laintiff's ability to sustain work in an ordinary day," the ALJ's narrative is sufficient, because "it is implicit in her opinion" that plaintiff can perform sedentary work on a sustained basis if the work is restricted as provided in the residual functional capacity assessment determined by the ALJ. *See Payne*, 402 F. App'x at 118. For these reasons, reversal or remand on this point is not warranted.

### c. Objection No. 3

Plaintiff argues that the ALJ "failed to evaluate whether [p]laintiff possesses the mental capacity for sustained and continuous employment." (Dkt. 25 at 8.) According to plaintiff, the Magistrate Judge "fails to address the ALJ's failure to specifically evaluate and

explain how [plaintiff] retains these basic mental abilities required of employment and the capacity to maintain a normal work schedule." (*Id.* at 9.)

But plaintiff never claimed that he lacked the mental capacity for sustained and continuous employment. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by h[is] impairments." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The ALJ was not required to address an issue that was not first raised by plaintiff. Thus reversal or remand on this point is not warranted.

### d. Objection No. 4

Plaintiff argues that the "Magistrate Judge significantly understated the extent of [plaintiff]'s low back pathology as described in pain management doctor Dr. Rao's records, and in neurosurgeon Dr. Shah's records." (Dkt. 25 at 10.) According to plaintiff, the "ALJ's summation of the extent of [plaintiff]'s back pathology and associated symptoms is misleading, inaccurate[,] and when the record is read as a whole[,] there is not substantial evidence in the whole record to support

11

the idea that [plaintiff] is capable of employment on a sustained and continuous basis." (*Id.* at 12.)

Plaintiff cites parts of the medical record that include recitations of his subjective statements of pain. For example, plaintiff highlight's Dr. Rao's recitation that plaintiff had complained of "numbness, tingling, muscle spasms[,] and sweating cold sensations," and that "[p]ain increases with physical activity" and "is unbearable recurrence [*sic*] of persistent severe lower back pain radiating to the right hip and leg." (*Id.* at 10.) Plaintiff also cites subjective complaints recited in Dr. Shah's records that he had complained of "experiencing pain in his back on both sides" that had "become much worse," including "numbness in right leg and constant weakness in his lower back," and which had been exacerbated by "exercise, sitting, standing, walking, bending, pulling[,] and squatting." (*Id.* at 11.) Dr. Shah recited that plaintiff "complains of pain sometimes going into his legs and sometimes losing his balance."

Plaintiff also notes that the record "includes a lumbar CT scan in July 2011 which revealed bilateral spondylolysis at L5, a central disc protrusion at L4-5, and a broad based disc herniation at L5-S1 which extends into the neural foramina bilaterally," and an "MRI [that]

12

showed a disc protrusion and annular tear at L4-L5." Plaintiff argues that "[t]he ALJ's minimization of the [his] low back pathology is repeated by the Magistrate Judge by quoting isolated fragments from the record so as to create the misleading and inaccurate picture that [his] back is normal and that Dr. Rao released him to activity when in fact the record shows that surgery is contemplated once he loses weight." (*Id.* at 11-12.)

Plaintiff's objection is without merit. The Magistrate Judge explicitly considered the CT scan that "showed 'bilateral spondylolysis' but 'L5 without spondylolisthes[,] [*sic*]' '[m]inor central disc protrusion at L4-L5[,]' and '[f]airly prominent broad-based disc protrusion at L5-S1 which extends to the neural foramina bilaterally, fairly extensively.'" (Dkt. 24 at 9.) The Magistrate Judge also noted that Dr. Rao "treated [p]laintiff with epidural steroid injections in June, July[,] and November, 2011," for his pain. (*Id.* at 10.) Moreover, the Magistrate Judge highlighted that Dr. Shah "placed [p]laintiff on a '15-20 pound work weight restriction and told him that [he] would support [him] for disability if he needed a letter of support but . . . [Dr. Shah didn't] recommend surgery at th[at] point." (*Id.*) In addition to these records,

13

the ALJ also highlights many of the same recitations in her decision. (*See* Dkt. 7-2 at 39-40.)

More to the point, the ALJ considered plaintiff's subjective complaints of pain and physical limitations, but concluded that his "allegations regarding the limiting effects of his physical impairments are not wholly credible" because they were "not supported by the medical evidence of record." (Dkt. 7-2 at 41.)

> While [plaintiff] complained of carpal tunnel syndrome and gout, the treatment records do not contain any evidence of these diagnoses. [Plaintiff] alleges severe back pain, yet the medical evidence of record reveals that he sought only sporadic treatment from specialists. He reported that injections and physical therapy helped, yet he discontinued pain management treatment and physical therapy almost one year [prior to his application]. [Plaintiff] was advised that weight loss would be necessary before surgery would be considered, despite having failed conservative treatment.

(*Id.*)

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's

credibility." *Id.* (internal quotation omitted). "Rather, such determinations must find support in the record." *Id.*

Here, the ALJ based her determination on the lack of supporting objective medical evidence. And plaintiff, in his objection, does not point to anything new in the record that was not explicitly cited and considered by both the ALJ and the Magistrate Judge. Again, this Court's duty is to decide whether substantial evidence supports the ALJ's credibility determination, that is, whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Given the lack of any record diagnosis for plaintiff's complaints of carpal tunnel or gout, and the fact that he did not seek treatment for severe back pain for over a year before filing for disability benefits, the ALJ's conclusion that plaintiff's subjective complaints of pain were not wholly credible is supported by substantial evidence. Thus reversal or remand on this point is not warranted.

### e. Objection No. 5

Finally, plaintiff argues that "both the ALJ and the Magistrate Judge commit[ted] legal error for asserting that the opinion of the non-examining physician[, Dr. Holmes,] who failed to review all the evidence

constituted substantial evidence justifying affirmance, particularly in light of the opinion of [plaintiff]'s treating neurosurgeon Dr. Shah who supported his application for disability benefits." (Dkt. 25 at 13.)

But as set forth above, the ALJ did not rely solely on the physical residual functional capacity assessment performed by Dr. Holmes. The ALJ also relied on the functional abilities evaluation of Jodie Sarginson. (Dkt. 7-2 at 40.) Moreover, although Dr. Shah supported plaintiff's application for benefits, the more important determination was that Dr. Shah "recommended a 15 to 20-pound work weight restriction," which is much less restrictive than the ALJ's ultimate determination of residual functional capacity.

Dr. Shah's report also noted that "MRIs failed to show any significant neural impingement." (Dkt. 7-7 at 105.) Dr. Shah noted that he wanted plaintiff "to be on a 15-20lb work weight restriction and told [plaintiff] that [he] would support [plaintiff] for disability if he needed a letter of support" but did not "recommend surgery at this point." (*Id.*) Dr. Shah suggested that if plaintiff "require[d] any help with Pain Management he c[ould] also let [Dr. Shah] know and [he would] have [plaintiff] referred forward." (*Id.*) As noted above, plaintiff

did not thereafter seek pain treatment for the year prior to filing his disability claim. Thus reversal or remand on this point is not warranted.

## IV. Conclusion

For the reasons set forth above, plaintiff's objections (Dkt. 25) are DENIED, the Magistrate Judge's Report and Recommendation (Dkt. 24) is ADOPTED in full, plaintiff's motion for summary judgment as supplemented (Dkt. 9; Dkt. 15) is DENIED, and defendant's motion for summary judgment as supplemented (Dkt. 11; Dkt. 23) is GRANTED.

IT IS SO ORDERED.

Dated: September 8, 2016      s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 8, 2016.

     s/Felicia M. Moses
     FELICIA M. MOSES
     Case Manager